IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



UNITED STATES OF AMERICA

v.  CRIMINAL NO. 1:14cr83 HSO-RHW

KAMRAN PAHLAVAN

18 U.S.C. § 371
18 U.S.C. § 666(a)(1)(B)
18 U.S.C. § 1343
18 U.S.C. § 1512(c)(2)
18 U.S.C. § 1001

**The Grand Jury charges:**

At all times relevant to this Indictment:

1. The Harrison County Utility Authority ("HCUA") was a political subdivision of the State of Mississippi with the responsibility to manage water, wastewater, storm water, and solid waste services in Harrison County. As such, the HCUA was a local government agency as that term is defined in Section 666(d), Title 18, United States Code, and which received benefits in excess of $10,000 in a one year period under Federal programs providing Federal assistance to the HCUA.

2. The defendant, **KAMRAN PAHLAVAN**, was the executive director of the HCUA from 1997 through 2013, and as such was an agent of the HCUA, as that term is defined in Section 666(d), Title 18, United States Code.

3. Co-Conspirator 1 was the owner and operator of S.H. Anthony, Inc., a company based in Gulfport, Mississippi, which had a contract with and performed other work for the HCUA.

## COUNT 1

4. The allegations contained in paragraphs 1 through 3 of this indictment are realleged and incorporated by reference as though fully set forth herein.

5. From in or about October 2006 through in or about November 2011, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendant, **KAMRAN PAHLAVAN**, did knowingly and intentionally combine, conspire, confederate, and agree with persons known and unknown to the grand jury, to commit the following offense:

Bribery concerning programs receiving federal funds, in violation of Section 666(a), Title 18, United States Code.

Honest Services Wire Fraud, in violation of Sections 1343 and 1346, Title 18, United States Code.

6. It was part of the conspiracy that defendant **KAMRAN PAHLAVAN** would corruptly solicit, accept or agree to accept things of value from Co-Conspirator 1 that benefited **PAHLAVAN** and his family, including automobiles, New Orleans Saints tickets, hotel rooms, use of a beach condominium, home repairs and other tangible and intangible things of value, in exchange for **PAHLAVAN** favorably supervising, approving work for, and recommending contracts be awarded to Co-Conspirator 1's company, S.H. Anthony, Inc., from the HCUA which involved $5,000 or more and was a scheme and artifice which defrauded and deprived the citizens of the State of Mississippi and the HCUA of their right to the honest and faithful services of defendant **PAHLAVAN** through bribery and kickbacks and the concealment of material

information.

In furtherance of the conspiracy and to carry out its objectives, the following overt acts were committed:

7. On or about July 25, 2007, Co-Conspirator 1 assisted defendant **PAHLAVAN** in purchasing an automobile in Long Beach, Mississippi, by using funds from S.H. Anthony, Inc., a company which had previously been awarded a contract from the HCUA, with such funds being used to pay for almost half of said automobile for defendant **PAHLAVAN**.

8. From on or about January 1, 2008, through September 12, 2008, defendant **PAHLAVAN** authorized and approved the HCUA to make multiple payments to Co-Conspirator 1's company, S.H. Anthony, Inc., relating to emergency services and other services that fell outside the existing contract that S.H. Anthony, Inc. had with the HCUA.

9. On or about September 12, 2008, Co-Conspirator 1 assisted defendant **PAHLAVAN** in purchasing another automobile in Biloxi, Mississippi, by using funds from Co-Conspirator 1's company, S.H. Anthony, Inc., which was a contractor for the HCUA, with such funds being used to pay for more than half of said automobile for defendant **PAHLAVAN**.

10. From on or about September 13, 2008, through on or about February 9, 2011, defendant **PAHLAVAN** authorized and approved multiple payments from the HCUA to Co-Conspirator 1's company, S.H. Anthony, Inc., relating to emergency services and other services that fell outside the existing contract that S.H. Anthony, Inc. had with the HCUA.

11. On or about March 18, 2010, defendant **PAHLAVAN** presented and recommended that the HCUA Board of Directors approve an amendment that would expand the

work and increase the rate schedule of an existing contract HCUA had with Co-Conspirator 1's company, S.H. Anthony, Inc., which the HCUA Board of Directors approved on April 1, 2010.

12. On or about July 15, 2010, defendant **PAHLAVAN** presented and recommended that the HCUA Board of Directors approve a second amendment to the contract between Co-Conspirator 1's company, S.H. Anthony, Inc. and the HCUA, which would expand the scope of work, increase the scheduled monthly payments, and extend the contract expiration date of the existing contract for Co-Conspirator 1's company, S.H. Anthony, Inc., which the HCUA Board of Directors ultimately approved.

13. On or about February 9, 2011, Co-Conspirator 1 purchased an automobile for defendant **PAHLAVAN**, wiring funds from Co-Conspirator 1's company, S.H. Anthony, Inc., in Mississippi, to a company in the State of Illinois.

14. On or about March 21, 2011, Co-Conspirator 1 transferred to defendant **PAHLAVAN** the title of the automobile purchased by Co-Conspirator 1 on February 9, 2011.

15. From on or about March 22, 2011, through in or about November 2011, defendant **PAHLAVAN** authorized and approved multiple payments from the HCUA to Co-Conspirator 1's company, S.H. Anthony, Inc., relating to emergency services and other services that fell outside the existing contract that S.H. Anthony, Inc. had with the HCUA.

16. From in or about January 2008 through in or about November 2011, rather than solicit separate bids from two or more companies legitimately competing for a project, defendant **PAHLAVAN** asked Co-Conspirator 1, or defendant **PAHLAVAN** had HCUA employees ask employees of S.H. Anthony, Inc., to submit bids from S.H. Anthony, Inc. and another company,

sometimes even after Co-Conspirator 1's company, S.H. Anthony, Inc., had already completed the work, in order for the HCUA to satisfy competitive bidding requirements, with HCUA ultimately awarding such work to S.H. Anthony, Inc.

All in violation of Section 371, Title 18, United States Code.

## COUNT 2

17. The allegations contained in paragraphs 1-16 of this indictment are realleged and incorporated by reference as though fully set forth herein.

18. From in or about December 2009 through in or about November 2011, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendant, **KAMRAN PAHLAVAN**, did corruptly solicit, demand, accept and agree to accept multiple things of value from a person, Co-Conspirator 1, intending to be influenced and rewarded in connection with a transaction and series of transactions of the Harrison County Utility Authority involving a thing of value of $5,000 or more, in violation of Section 666(a)(1)(B), Title 18, United States Code.

## COUNT 3

19. The allegations contained in paragraphs 1-16 of this indictment are realleged and incorporated by reference as though fully set forth herein.

20. From in or about September 2010 through in or about March 2011, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendant, **KAMRAN PAHLAVAN**, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud to deprive the citizens of the State of Mississippi and the

HCUA of the intangible right to his honest services, for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, to wit, defendant **PAHLAVAN** received a bribe from Co-Conspirator 1 in the form of a vehicle purchased with funds wired across state lines in exchange for defendant **PAHLAVAN** favorably supervising, approving work for, and recommending contracts be awarded to Co-Conspirator 1's company, S.H. Anthony, Inc., from the HCUA.

All in violation of Sections 1343, 1346, and 2, Title 18, United States Code, and *Pinkerton v. United States*, 328 U.S. 640 (1946) (coconspirator liability).

## COUNT 4

21. From in or around November 2011 through in or around June 2012, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendant, **KAMRAN PAHLAVAN**, did corruptly attempt to obstruct, impede, and influence a Federal Grand Jury investigation, an official proceeding, by instructing Co-Conspirator 1 to sign and backdate a false and fictitious promissory note purporting to cover the vehicle purchased by Co-Conspirator 1 for defendant **PAHLAVAN** on February 9, 2011, which was subsequently presented by defendant **PAHLAVAN** to special agents of the Federal Bureau of Investigation as genuine, in violation of Section 1512(c)(2), Title 18, United States Code.

## COUNT 5

22. On or about June 18, 2012, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendant, **KAMRAN PAHLAVAN**, did

willfully and knowingly make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, by telling special agents with the Federal Bureau of Investigation that he did not know Co-Conspirator 1 had paid anything on the purchase price for each of two vehicles defendant **PAHLAVAN** bought in 2007 and 2008, and furthermore that, shortly after Co-Conspirator 1 purchased an automobile for defendant **PAHLAVAN** on February 9, 2011, Co-Conspirator 1 agreed to finance the vehicle for defendant **PAHLAVAN**, which was allegedly memorialized in a promissory note dated March 21, 2011, which **PAHLAVAN** presented to the FBI, and that defendant **PAHLAVAN** had previously paid Co-Conspirator 1 $6,794.00 in cash and subsequently began making monthly payments of $241.12 at first in cash and then by check. The statements and representations were false because, as defendant **PAHLAVAN** then and there knew, Co-Conspirator 1 had paid approximately half of the purchase price of the two vehicles purchased by defendant **PAHALVAN** in 2007 and 2008, and the March 21, 2011, promissory note was false and fictitious, having been created by defendant **PAHLAVAN** and

presented to Co-Conspirator 1 by defendant **PAHLAVAN** for Co-Conspirator 1's signature and backdating after **PAHLAVAN** had first been interviewed by the FBI in November 2011, and defendant **PAHLAVAN** never paid Co-Conspirator 1 $6,794.00 in cash or monthly payments of $241.12 in cash for such vehicle.

In violation of Section 1001, Title 18, United States Code.

GREGORY K. DAVIS
United States Attorney

A TRUE BILL
s/signature redacted

_____
Foreperson of the Grand Jury

This indictment was returned in open court by the foreperson or deputy foreperson of the grand jury on this the 9th day of December, 2014.

_____
UNITED STATES MAGISTRATE JUDGE